[No. C000790. Third Dist. Aug. 27, 1987.]

LINDA JONES GENERAL BUILDER et al., Plaintiffs and
Appellants, v.
CONTRACTORS' STATE LICENSE BOARD, Defendant and
Respondent.

## COUNSEL

Max H. Hoseit, H. L. Koelewyn, William J. Douglas and Hoseit & Koelewyn for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Joel S. Primes, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**BLEASE, Acting P. J.**—Appellant Linda Jones General Builder (Jones) appeals from the denial of her petition for a writ of mandamus (Code Civ. Proc., § 1094.5) by which she sought to set aside the disciplinary action of the Contractors' State License Board (Board). The disciplinary action was based on the Board's finding that snow damage to the covered walkway of an Alpine Meadows residence Jones built and subsequently sold was caused in part by the manner in which the walkway was constructed. Jones contends she cannot be disciplined for violating the provisions of Business and Professions Code sections 7109 and 7113[1] as charged in the accusation because she was the owner of the property during the construction. We agree. We will reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 1981, after hiring an architect to draw up plans and specifications, Jones, a licensed contractor, began construction of a single family residence in Tahoe City, California, with the intention of residing there. She lived in the house throughout much of the construction. At some point during this time, Jones decided she did not want to live there. The house was completed on September 24, 1982. On September 25, 1982, Jones sold the house to John and Katherine Williams and Andrew and Sally Schafer.

---

[1] All further references to code sections are to the Business and Professions Code unless otherwise indicated.

The winter snowfall of 1982/1983 was particularly heavy. In April 1983, after viewing the property, Jones sent John Williams a telegram informing him that a hazardous condition existed as to the covered walkway connecting the house to the garage.[2] The horizontal pressure of snow and ice against the side of the walkway had caused one of the sono-tubes[3] intended to provide support for the lower portion of the walkway to sink, resulting in a tilt in the walkway.[4] Jones refused to pay for any of the repairs, claiming the damage was caused by the owners' failure to properly remove the snow buildup between the house and walkway. The owners repaired the walkway at a cost of $20,806.82.

The Board initiated a disciplinary action against Jones. The accusation alleged violations of sections 7109 and 7113. Jones was charged with violating section 7109 "in that in the absence of specific requirements in the plans or specifications she wilfully departed from and disregarded accepted trade standards for good and workmanlike construction in a material respect without the owners' consent and to the prejudice of the owner in the following respects: . . . ." The accusation then listed eight particulars.[5] The accusation further charged Jones was subject to discipline under section 7113 "in that she failed in a material respect to complete the Williams/Schafer project for the contract price and the owner has been or will be required to spend a substantial sum in excess of the contract price to complete the project in accordance with the contract."

At the Board hearing, evidence was presented that Jones had deviated from the original design plans for the walkway in two ways. She used lighter steel connectors between the concrete support sono-tubes and wooden beams than called for in the specifications and she used short, unconnected beams to support the roof structure rather than the specified continuous beams.

The Board found: Jones had deviated from the architect's plans and specifications with regard to the wooden beam and metal connectors; the Williamses and Schafers had failed to properly maintain the house by re-

---

[2] The house apparently was not the owners' principal residence.

[3] A sono-tube is a cardboard hollow tube placed in the ground and filled with concrete; support brackets are then attached.

[4] The house is on a steep slope; the covered walkway zigzags through the trees from the house to the garage. The damaged portion was that section near the house, running parallel to it.

[5] The allegations included: failure to attach deck with lag bolts, failure to securely anchor sono-tubes, failure to tie barge rafters with lag bolts, failure to secure handrail on stairs, failure to install sufficient number of supporting posts for stair railing, failure to adequately secure structural beam, failure to shear covered walkway with adequate plywood, and failure to provide adequate supporting saddles for sono-tubes.

moving the accumulated snow between the house and the walkway;[6] the damage to the walkway was caused by the combination of improper construction and lack of adequate snow removal; and that Jones had violated sections 7109 and 7113. Jones's three contractor licenses were revoked; the revocation was stayed and she was placed on probation for two years on the condition she pay $10,403 in restitution to the Williamses and Schafers.[7]

Jones filed a petition for writ of mandamus (Code Civ. Proc., § 1094.5) in the superior court. She claimed that the Board's action was barred by the statute of limitations, that sections 7109 and 7113 are inapplicable, because no construction contract was involved, and that the conclusion the damage to the walkway was caused by the alleged plan deviations was not supported by substantial evidence. The trial court denied the petition.

## DISCUSSION

Jones contends on appeal that sections 7109 and 7113 are applicable only when the contractor has entered into a construction contract with the owner. She argues that, because the only contract she entered into with the Williamses and Schafers was one for the sale of the house after its completion, she cannot be disciplined under those sections. We agree.

### A.

Section 7000 et seq. constitute the Contractors License Law. (§ 7000.) These provisions govern the licensing requirements for and disciplinary actions against contractors. The causes for discipline are contained in sections 7107 through 7123.[8]

The disciplinary proceedings are subject to the Administrative Procedure Act. (§ 7091; Gov. Code, § 11501.) The proceeding must be initiated by an accusation which "specif[ies] the statutes and rules which the respondent is alleged to have violated . . . ." (Gov. Code, § 11503.) Disciplinary action can be founded only upon charges made in the accusation. (See *Wheeler* v. *State Bd. of Forestry* (1983) 144 Cal.App.3d 522, 526-527 [192 Cal.Rptr. 693].)

---

[6] Part of the walkway is parallel to and approximately 14 feet from the house. When the snow was removed from the roof by the owners, it was pushed down into the area between the house and the walkway, causing lateral stress on the walkway.

[7] We subsequently granted Jones's request for stay of execution of the Board's decision.

[8] The possible causes for discipline of a licensee include such actions, for example, as diverting funds (§ 7108); violating safety provisions causing injury to an employee (§ 7109.5); violating the law (§ 7110): failing to keep records (§ 7111); misrepresenting a material fact when obtaining a license (§ 7112), or knowingly contracting with an unlicensed contractor (§ 7118).

## B.

Section 7109 reads: "Willful departure from or disregard of plans or specifications or, in the absence of specific requirements within the plans or specifications, of accepted trade standards for good and workmanlike construction in any material respect, and prejudicial to another without consent of the owner or his duly authorized representative, and without the consent of the person entitled to have the particular construction project or operation completed in accordance with such plans and specifications constitutes a cause for disciplinary action." ¶ ▇ The statute provides two separate grounds for discipline: 1) willful and prejudicial departure from existing plans without the consent of the owner and the person entitled to have the project completed in accordance with the plans, or 2) in the absence of specific requirements within such plans, willful and prejudicial departure from accepted trade standards for good and workmanlike construction without the consent of the owner and the person entitled to have the project completed in accordance with the plans. For both grounds, the statute presupposes a relationship between the contractor and an "owner" during the construction project. It assumes the existence of a construction contract. (See, e.g., *Mickelson Concrete Co.* v. *Contractors' State License Bd.* (1979) 95 Cal.App.3d 631 [157 Cal.Rptr. 96].) A contractor can violate this statute only if he or she fails to obtain consent of the owner (and any other person entitled to have the project completed in accordance with the specifications or in accordance with accepted trade standards) before deviating from the plans or accepted trade standards.

▇ Jones cannot be disciplined for violating section 7109. She was the owner of the property during the construction. She had plans and specifications drawn up by an architect for her own residence. At some point during the construction of the walkway she apparently deviated from those plans. After the house construction was nearly or fully[9] completed, she sold the house and property to the Williamses and Schafers. It was only at that point, i.e., at the time of the negotiations for the sale, that she developed any relationship with the current owners. Because Jones was the owner at the time she deviated from the plans, she was not required by section 7109 to obtain anyone else's consent.[10]

The Attorney General claims that the purchasers, although possibly not "owners" under the statute, were "person[s] entitled to have the particular

---

[9] The record contains conflicting evidence as to whether the house was fully completed at the time of the execution of the sales contract or whether minor projects remained to be completed.

[10] The Attorney General offers no suggestion as to how Jones was to have obtained the consent of unknown purchasers.

construction project or operation completed in accordance with such plans and specifications . . . ." (§ 7109.) The Attorney General argues, without evidentiary support in the record,[11] that the purchasers relied on the plans and specifications. In essence, the Attorney General's argument appears to be that when Jones sold the property, she had a duty to disclose to the buyers the fact that she had deviated from the architect's plans. However, section 7109 requires only that the contractor obtain the owner's consent before deviating from the plans; it is not a disclosure statute. It does not provide for the discipline of a licensee for failure to reveal to a subsequent purchaser that the building was not constructed entirely as originally planned.

Moreover, we note that the statute says that the plans and specifications can only be deviated from if the contractor has the consent of the owner *and* the person entitled to have the construction project completed in accordance with the plans. Thus the statute requires that in certain circumstances consent to deviate must be obtained from persons *in addition to the owner*. The person "entitled to have the . . . project . . . completed in accordance with [the] plans" is not a substitute for the owner. Presumably, if a subcontractor has been hired to complete a specific project it may be necessary that consent be obtained not only from the property owner but also from the general contractor. This provision does not create an alternative to obtaining the consent of the owner, but adds an additional requirement in certain circumstances. Jones cannot be disciplined for violating section 7109.

### C.

We note further that, even if we were to indulge in the assumption that an owner contractor could violate the statute by deviating from the original construction plans, the finding that Jones violated section 7109 suffers another fatal disability. ■ As we stated earlier, the Administrative Procedure Act requires that the accusation specify the statutes and rules alleged to have been violated. (Gov. Code, § 11503.) "The fulfillment of this requirement is a statutory predicate for disciplinary action. It follows that the finding must be based upon the accusation. . . . Disciplinary action cannot be founded upon a charge not made." (*Wheeler* v. *State Bd. of Forestry, supra,* 144 Cal.App.3d at p. 527.)

■ Here, the charge was that "*in the absence of specific requirements in the plans or specifications she wilfully departed from and disregarded accept-*

---

[11] The Attorney General cites to the record when making the claim that the purchasers relied on the plans and specifications. However, a reading of the cited portion of the transcript reveals only that Williams reviewed the plans *at the disciplinary hearing*.

*ed trade standards for good and workmanlike construction* in a material respect without the owners' consent and to the prejudice of the owner . . . ." (Italics added.) The finding by the Board was that Jones deviated from the plans and specifications. Thus, she was found to have violated one of the two separate grounds of discipline under section 7109.[12] However, the ground to which the finding applied was not the ground for which she was charged. Because "disciplinary action cannot be founded upon a charge not made" (*Wheeler, supra,* at p. 527), Jones could not be disciplined for deviating from the plans and specifications under section 7109 even if the statute were construed to apply to owner contractors.[13]

### D.

The finding that Jones violated section 7113 suffers the same fate. Section 7113 provides that disciplinary action is warranted for "[f]ailure in a material respect on the part of a licensee to complete any construction project or operation for the price stated in the contract for such construction project or operation or in any modification of such contract . . . ." This statute also presupposes a construction contract. Jones cannot have failed to complete the construction project for the contract price where there was no contract for the construction. The only contract was one for sale of the property and residence. The statute is inapplicable. Jones cannot be found to have violated it.[14]

The only charges against Jones were the violations of sections 7109 and 7113. Consequently, those are the only violations upon which disciplinary action can be founded. (See *Wheeler* v. *State Board of Forestry, supra,* 144

---

[12] Presumably, a contractor can be disciplined for deviating from the plans or specifications without the owner's consent and with prejudice to the owner even if the deviation does not result in workmanship that is below accepted trade standards.

[13] For the same reason, the Attorney General's argument that the Schafers and Williamses were "person[s] entitled to have the . . . construction project . . . completed in accordance with . . . plans" suffers another fatal blow. The accusation charged that Jones failed to obtain the consent of the *owner.*

[14] We do not suggest that merely because Jones was engaged in the construction of her own project, she was not subject to disciplinary action by the Board if she violated provisions of the Contractors License Law. Section 7090 (although poorly written) appears to provide that a licensee may be subject to disciplinary action even though the grounds for such action arose while the licensee was acting under circumstances which might otherwise exempt him or her from the requirements [such as licensing requirements] of the chapter. However, the fact that Jones was subject to discipline if she violated provisions of the Contractors License Law does not mean that she can be disciplined for allegedly violating statutes which are inapplicable to her or for which she was not adequately charged.

Nor do we suggest that the owners could not have pursued tort or contract remedies against Jones stemming from the purchase of the residence.

Cal.App.3d at pp. 526-527.) Because Jones cannot be found to have violated those statutes, the disciplinary action cannot stand.[15]

Because the Board's findings are not sustainable, the judgment is reversed and the superior court is directed to issue a peremptory writ of mandate compelling the Board to vacate its decision and to enter a decision in favor of Jones.

Carr, J., and Harvey, J.,* concurred.

---

[15] In light of our disposition, we need not reach Jones's additional contention that the statute of limitations bars the disciplinary action.

*Assigned by the Chairperson of the Judicial Council.