Filed 11/22/23  INJ v. City of Belvedere CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| INJ, LLC et al.,<br><br>     Petitioners and Appellants,<br><br>v.<br><br>CITY OF BELVEDERE,<br><br>     Respondent,<br><br>DAVID MCCLOSKEY,<br><br>     Real Party in Interest. | A164314<br><br>(Marin County<br>Super. Ct. No. CIV2000065) |

The owner of a luxury waterfront home in Belvedere, California sought a writ of administrative mandamus to overturn a decision by the City of Belvedere approving the construction of a private residential pier and boat dock on the shoreline of his neighbor's property.

The trial court denied his petition, and he now appeals raising three issues.  He asserts that:  (1) two of the city council members were biased against him, thereby denying him a fair hearing; (2) the city violated his due process rights by evaluating the project under generalized design standards prescribed by local code rather than more specific standards applicable to a specially designated waterfront zone in which the project is not located; and

1

(3) the city prejudicially abused its discretion in granting the conditional use permit because the pier invades his privacy.

We reject his contentions and affirm the judgment.[1]

## BACKGROUND

Anthony Piazza, through his limited liability company INJ, LLC of which he is the managing member (collectively, "Piazza"), owns and resides in a 6,000-square foot waterfront home located at 125 Belvedere Avenue in Belvedere, California that he purchased for $13 million. It boasts sweeping views of Richardson Bay and the Golden Gate Bridge and amenities including a private pier with a boathouse, 12,000-pound boatlift and 30-foot floating dock.

On February 12, 2018, Piazza's next-door neighbor at 121 Belvedere Avenue, David McCloskey, submitted applications to the City of Belvedere for design review and approval of a general use permit for the construction of a private boat pier off the shoreline of his own property, along with access stairs leading down to the pier, a hill elevator ("hillavator") and a new rear yard deck.

After two hearings before the Planning Commission and an appeal to the City Council, the Planning Commission on April 16, 2019, approved design review for the land-based features of the project (the deck, stairs and hillavator) but denied design review and a use permit for the boat pier itself. By this point, the project's design had undergone a number of changes, and

---

[1] The parties disagree as to whether individual members of the City of Belvedere Planning Commission (Planning Commission) and individual City of Belvedere City Council (City Council) members are parties to this appeal, a question they say is relevant only if this court grants appellants any relief. Because we are affirming the judgment, it is unnecessary to address that issue.

2

three of McCloskey's neighbors, including Piazza, opposed the currently proposed location of the pier. The Planning Commission found that the size and location of the proposed pier would "crowd the shoreline, negatively impacting the views of the water for the neighborhood and the public." The Planning Commission's decision effectively meant McCloskey had been granted a permit to build stairs and a hillside elevator to nowhere.

McCloskey appealed the Planning Commission's decision to the City Council which, on June 10, 2019, remanded the project to the Planning Commission for further consideration at McCloskey's request. He was negotiating with some of his neighbors and, to accommodate their concerns, wanted to revert to the originally proposed location for the pier and allow the Planning Commission to consider that. The neighbors, through counsel, supported the remand request. Piazza, through counsel, objected to a remand and asked the City Council to deny McCloskey's appeal on the merits. During the June 10, 2019 appeal hearing, two members of the City Council, Mayor Bob McCaskill and Nancy Kemnitzer, made comments on the record that Piazza would later claim reflected their bias against him. We discuss that hearing in greater detail below.

On August 20, 2019, the Planning Commission on remand granted design review approval and approval of a conditional use permit for the pier.

Piazza appealed the decision to the City Council and sought to disqualify Councilmember Kemnitzer and Mayor McCaskill from participating in the appeal on the ground they were biased against him, as reflected by some of their comments at the previous City Council hearing. His disqualification request was implicitly denied. At a public hearing held on October 14, 2019, the City Council denied his appeal and affirmed the design review approval and issuance of a conditional use permit for the pier.

3

Piazza then filed a petition for a writ of administrative mandamus to challenge and set aside the City Council's decision, and the trial court denied his petition in a 16-page statement of decision.

This timely appeal followed.

**DISCUSSION**

**I.**

***The Bias Claim***

Piazza argues, first, that Councilmember Kemnitzer and Mayor McCaskill should have been disqualified from participating in his appeal to the City Council of the Planning Commission's approval of the pier, because they had prejudged the issues and were biased against him, as reflected by comments they made at the earlier hearing (on June 10, 2019), at which the City Council remanded the project back to the Planning Commission to consider McCloskey's revised proposed location for the pier.

We conclude he has failed to demonstrate bias. We will begin by setting out the comments allegedly reflecting bias in context.

**A. The June 10, 2019 City Council Hearing**

As noted, the June 10, 2019 City Council meeting was a hearing on McCloskey's appeal of the Planning Commission's refusal to approve the pier itself despite approving the onshore aspects of the project (i.e., the deck, stairs and elevator).

Mayor McCaskill presided over the City Council hearing.

The hearing opened with planning staff reporting that McCloskey's counsel had recently communicated that McCloskey was working with two of the other neighbors to discuss a revised location for the pier, which was the location he had originally proposed, and had asked that the project be remanded back to the Planning Commission to consider that revised pier

4

location. Staff recommended that the City Council remanded the appeal to the Planning Commission to consider the revised location and advised the City Council that it "may give guidance to the Planning Commission for its consideration, which guidance may include possible project location and configuration suggestions." Various council members asked questions about the current state of negotiations and revised pier location, following which the hearing was opened to public speakers.

McCloskey made a brief presentation explaining the evolution of the pier design (taking questions from City Council members), explained that he was currently proposing to build the pier in the originally proposed location, and explained that he wanted to work out as much as he could with his neighbors.

Piazza's counsel then spoke. He objected to the remand request, arguing it was a "complete surprise," and that "[e]ither we have an appeal or we don't have an appeal from a due process point of view." He asserted that either McCloskey had to withdraw his appeal or the City Council had to render a decision. He argued the Planning Commission already rejected the pier location that McCloskey was now reverting back to, and urged the Commission not to remand the project, affirm the Planning Commission's decision and require McCloskey to file a new application for a use permit.

Counsel for two of the neighboring properties spoke in favor of remanding the project to the Planning Commission. She argued the neighbors supported approval of a pier for McCloskey and that the question was really finding "the right balance," and urged a remand so the neighbors could try to work out a more logical placement because they now supported the previously proposed location.

Then followed brief questions of the planning staff, which reiterated its support for a remand so McCloskey could work with his neighbors.

Mayor McCaskill then asked for advice from the city attorney about the City Council's procedural options, including if the matter were remanded whether it would be permissible for individual council members to "make individual recommendations for the record, for the benefit of the Planning Commission, as to what we think may be the preferred alternative," given the council's lengthy involvement and familiarity with the project to date. The city attorney confirmed the City Council had discretion either to remand the issue back to the Planning Commission or decide the appeal. The city attorney also confirmed that individual council members could state their recommendations ("Yes, of course"). She explained that, "[w]hen the Planning Commission reviews these issues on remand, they're very diligent as far as going through the Minutes and the Record and understanding your individual concerns and take those into account when they again review the project."

Piazza's counsel then asked to speak again. He did not state any objection to City Council members expressing individual recommendations. He merely reiterated Piazza's opposition to a remand and asked the City Council to deny the appeal. He argued McCloskey was not foreclosed from "start[ing] over again and hav[ing] a new submission with this," but asserted that a second remand would be "unfair" given the amount of time and money already spent.

Mayor McCaskill then opened the hearing up for discussion by the City Council members.

Councilmember Kemnitzer spoke first. She indicated she had "read through all the materials," and expressed the view it was a "very unusual

6

situation" because the Planning Commission had denied approval for the pier even though it approved the onshore improvements. She then elaborated, and we italicize those comments that Piazza asserts reflects her bias against him:

"That's a very unusual situation. It seems to me that that's within the authority of the Planning Commission but, basically, it looks like a . . . hillavator to nowhere, which doesn't make a lot of sense to me. I have done a site visit . . . it's not a broad sand beach down there, so it really would be intended for use of a dock. [¶] So I think this is a very confusing situation. *Part of me would be inclined to grant the appeal, but from the comments today if it were not denied, it sounds to me like Mr. Piazza would rather remand despite the fact that he says he does not want a remand. A remand would be better than to grant the appeal.* [¶] So I can tell that reasonable minds may differ, but that actually seems the fairest thing to me. And . . . I feel that the Planning Commission might be able to clear up some of the record that I had a bit of trouble with in coming to this conclusion. But I really want to hear what my fellow Council Members say. I haven't made a final decision, but that's my thought." (Italics added.)

Mayor McCaskill then spoke. He expressed agreement with "most" of Councilmember Kemnitzer's remarks, and then reviewed one of the photographs in the record that he found to be "the most helpful of all of the various drawings, schematics, arial views and so forth, because it lets you visually, very clearly, see the two locations of the docks that were being considered." He then summarized briefly some of the procedural history and prior hearings, including that the Planning Commission had previously suggested the pier be relocated from its original proposal but that the individual who owns two of the neighboring properties had reservations

7

about relocating it.  He then made the following remarks, and again we italicize the portion that Piazza asserts shows bias:

"And it's my understanding what we were confronted with tonight was something I guess the attorneys call *de novo* which means we can make a decision based on our own study of the documents without regard to anything the Planning Commission may have previously decided one way or the other. And to that extent after reading all the material and, given the fact that Mrs. Safari, who owns two lots, would far prefer the original pier location whereas Mr. Piazza I think even objected to the proposal that the Planning Commission put forward. [¶] *I certainly, on my own, reached the conclusion that thinking that going back to the original pier location that had been first asked for by Mr. McCloskey was, in fact, probably the preferred solution.  It didn't make the neighbors on all three properties happy, but it at least made neighbors on two of the three properties happy.  And based on what we've heard in the prior hearing, as well as my visit with Mr. Piazza, I didn't get the sense that he would support either location.  And certainly my own conclusion is that Mr. McCloskey is, in fact, entitled to a pier and therefore trying to, in my mind, all I need to do is decide, well what's the preferred location.  And it seems to me the original pier location is the correct location*. [¶] And for that reason, I would support the Staff's recommendation to remand it back to the Planning Commission, simply because I think all of us on the City Council have a great deal of respect for the members of the Planning Commission and I would like them to look at it again with our comments and certainly the comments I, as an individual, not necessarily representing all five Council members, would be to ask them to reconsider the original pier location." (Italics added.)

Two more council members spoke, briefly. Both supported a remand and expressed agreement with Councilmember Kemnizter's views about a "hillavator to nowhere." One expressed the view that the original pier location appeared to be preferable and supported a remand so the Planning Commission could make an "appropriate decision," and the other supported a remand because "the ideal solution always is one where as many parties can agree as possible and seems to me we're kind of getting to that here," and the parties "would benefit" from having the Planning Commission consider the issue in its present posture given the Planning Commission's expertise.

The City Council then voted unanimously to remand the application to the Planning Commission.

Mayor McCaskill then asked the city attorney to confirm his understanding that "all of our comments about the project would be communicated back to the Planning Commission" on remand, she confirmed that they would be and the hearing concluded.

## B. Analysis

Piazza argues that the above italicized comments by Councilmember Kemnitzer and Mayor McCaskill reflect bias against him. He maintains they show that the two City Councilmembers had already made up their minds about McCloskey's entitlement to a pier and its location and they "in effect . . . directed a verdict with regard to the entitlement and location of the McCloskey pier, . . . only later to serve as the appellate judges with regard to their directed verdict" at the City Council hearing on October 14, 2019, which he asserts was improper. Additional evidence of Mayor McCaskill's bias, he asserts, is that the mayor was "wrong on the law" regarding McCloskey's entitlement to a pier and also factually wrong in observing that Piazza would not "support" a pier at "either location."

9

Administrative decisionmakers are presumed to be neutral and impartial.  To prevail on a claim of bias on the part of an administrative decisionmaker, a party "must establish 'an unacceptable probability of actual bias.' " (*Breakzone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1236 (*Breakzone*).)  "A mere suggestion of bias is not sufficient to overcome the presumption of integrity and honesty" to which the adjudicative body is entitled.  (*Ibid.*)  A party must demonstrate bias or prejudice "with concrete facts."  (*Id.* at p. 1237.)  " ' "Bias and prejudice are never implied and must be established by clear averments." [Citation.]  Indeed, a party's unilateral perception of an appearance of bias cannot be a ground for disqualification unless we are ready to tolerate a system in which disgruntled or dilatory litigants can wreak havoc with the orderly administration of dispute-resolving tribunals.' " (*Ibid.*)

We review this issue de novo.  (*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482.)

It is unnecessary to parse and examine each challenged statement allegedly reflecting bias.  Here, as respondents assert, the record reflects only that two public officials expressed opinions at a public hearing on a subject properly before them in the course of their official duties.  They entertained McCloskey's appeal, asked questions of the planning staff and received public comments, and ultimately engaged in deliberations over the appropriate procedural disposition.  Neither Councilmember Kemnitzer nor Mayor McCaskill exhibited personal animosity toward Piazza or engaged in advocacy during the hearing on behalf of McCloskey.  They merely expressed their individual views on a matter of legitimate public discussion.  (Cf. *City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 780 [a city council member "has not only a right but an obligation . . . to state his views on matters of

10

public importance"]; see also *Arnel Development Co. v. City of Costa Mesa* (1980) 28 Cal.3d 511, 518, fn. 8 [recognizing *City of Fairfield* involved an adjudicative proceeding].)

Piazza concedes the City Council had the right to remand the matter back to the Planning Commission. And because he does not argue otherwise, we also presume it was lawful and appropriate under local law for City Council members to express their individual views for the benefit of the Planning Commission on remand, precisely as they were (repeatedly) advised by the city attorney and urged by the planning staff to do. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [appellant has burden to demonstrate error and appellate court indulges all presumptions in favor of judgment's correctness].) Indeed, Piazza's counsel did not object to their doing so despite multiple opportunities to object during the hearing, from which it may be inferred that he perceived no legal impropriety in their doing so. We will not infer an unacceptable probability of actual bias from the mere expression of comments that were within the scope of their official duties to make in presiding over the appeal. (See, e.g., *Breakzone, supra,* 81 Cal.App.4th at p. 1240 [fact that city council member initiated an appeal of planning commission decision reflects no probability of bias where such action was authorized by local law]; *Woody's Group, Inc. v. City of Newport Beach* (2015) 233 Cal.App.4th 1012, 1029–1030 [discussing *Breakzone*].) Piazza cites no authority that their doing so reflects bias against him or tainted the later hearing with unfairness. The circumstances of this case do not remotely resemble the instances of bias in the authorities Piazza cites. (See, e.g., *Petrovich Development Company, LLC v. City of Sacramento* (2020) 48 Cal.App.5th 963, 974–976 [extensive evidence city council member coordinated "behind-the-scenes" opposition to development project that came

11

before city council, lined up votes of fellow council members, took affirmative steps to assist opponents of the project and organized the opposition at the hearing].)

Nor does he cite any authority suggesting that an adjudicative decisionmaker's factual error constitutes proof of an unacceptable probability of actual bias. Thus, assuming without deciding that Mayor McCaskill misunderstood Piazza's position (i.e., as reflected by his comment that "I didn't get the sense that he would support either location"), there is no basis for us to infer that the misunderstanding deprived Piazza of a fundamentally fair proceeding.

In his reply brief, Piazza makes a new argument: that there were improper *ex parte* communications by which the allegedly biased City Council members obtained information outside the normal administrative process, which contributed to their pre-determined views. Respondents filed a motion asking us to strike or disregard that argument as untimely and improper, which we previously took under submission. We now grant it. " 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764; see also *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1542.) Piazza's argument that the point merely elaborates on the bias argument made in the opening brief is unpersuasive. The point is disregarded.

In sum, Pizza has not demonstrated that either of the two City Council members were biased against him.

## II.

### *Unconstitutional Application of the Belvedere Municipal Code*

Next, Piazza argues that his constitutional due process rights were violated because the City did not evaluate the pier pursuant to any objective legal standard specifically applicable to maritime improvements. He bases this argument on a statement contained in a staff report prepared for the project stating, "there are no specific design regulations or objective standards to apply to maritime improvements proposed in Richardson Bay." Piazza asserts the City either should have promulgated a specific maritime ordinance or applied the criteria contained in an ordinance that specifically governs maritime improvements in a limited geographic area of the City, chapter 20.06 of the Belvedere Municipal Code, which applies to an area called the West Shore where this project is not located. And because the City did neither, Piazza contends, he was denied due process of law. He asserts that the City instead applied more general provisions of the Municipal Code (which he identifies as "§§ 20.4.005 and 20.04.110 to 20.04.210") that he contends only contain criteria applicable to onshore development not development located on Richardson Bay, and thereby violated his constitutional rights.

We reject this argument because it is too undeveloped for us to consider it.

To begin, Piazza makes no attempt to explain and analyze any of the relevant ordinances. He does not address the ordinance(s) the City *did* apply when it approved the pier nor explain in what respect they are unconstitutionally vague. And that omission is significant because, as pointed out by respondents, broadly worded zoning standards are generally upheld as constitutional due to the discretion afforded to local planning

13

officials in carrying out their duties. (See generally *Sacramentans for Fair Planning v. City of Sacramento* (2019) 37 Cal.App.5th 698, 713 [rejecting argument that city planning policy was unconstitutionally vague and "in effect" no standard].) Piazza also does not identify the specific criteria in the West Shore ordinance (i.e., chapter 20.06) he contends the City *should have applied* (or, at least, looked to for guidance) nor explain why, in his view, doing so would have rendered the City's planning process constitutional.[2]

Piazza's constitutional argument also is confusing and therefore not persuasive. As noted, it rests on a single sentence contained in a lengthy staff report stating that, "there are no specific design regulations or objective standards to apply to maritime improvements proposed in the Richardson Bay." He calls this a "binding admission." But his reliance on that sentence is misleading, because the same staff report addresses and applies more generalized development standards under the City's master plan and the Belvedere Municipal Code and concludes the project is in conformity with both. Compounding the confusion, Piazza contends in his reply brief that the constitutional problem is not that the City applied *vague* guidelines to the project but *no* guidelines at all. But the City did apply objective legal standards: as just noted, it applied various general provisions of the Belvedere Municipal Code that Piazza does not analyze or discuss.

The limited caselaw Piazza cites (two cases) also is of no help to us. *Wheeler v. State Bd. of Forestry* (1983) 144 Cal.App.3d 522 did not involve the

---

[2] He cites findings in the ordinance stating that *reason* the City adopted the specific maritime standards for the West Shore was " 'to minimize their interference with views and privacy of neighboring property owners,' " but does not explain what those standards are. He also asserts the pier conflicts with those standards but does not explain the point.

constitutional validity of land use regulations, it addressed whether disciplinary charges brought for alleged "gross incompetence" complied with the Administrative Procedures Act. And *Tahoe-Sierra Preservation Council v. State Water Resources Control Bd.* (1989) 210 Cal.App.3d 1421 *rejected* a constitutional challenge to land use regulations (at issue there was a regional water quality plan that affected private development). Citing *Wheeler*, *Tahoe-Sierra Preservation Council* observed that "a standard that has no content is no standard at all and is unreasonable" (*id*. at p. 1439), which is Piazza's claim here. And yet the next sentence illustrates why Piazza's appellate argument is insufficient to demonstrate error: "Plaintiffs claim that the [regulation] is unreasonable on this ground, but *do not support it by persuasive reasoning or examples of the manner in which the [regulation] is deficient*." (*Ibid.*, italics added.)

The same is true here. As respondents argue, Piazza's appellate argument contains no " 'meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error.' " (*Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817.) "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078 [appellant failed to analyze any relevant legal authority "as applied to the facts in this case" in a manner that might lead appellate court to perceive a constitutional question concerning administrative agency's action]; accord, *KCSFV I, LLC v. Florin County Water Dist.* (2021) 64 Cal.App.5th 1015, 1031 [appellate courts disregard "conclusory arguments"].) We are not required to develop legal

arguments for the parties, and decline to do so here.  Piazza has failed to demonstrate a constitutional violation.

Finally, we note that scattered within Piazza's lengthy briefing on this issue are other arguments.  They include an assertion that Belvedere has not consistently limited application of section 20.06 to West Shore which he says is another constitutional violation; an assertion that no deference is owed to Belvedere's interpretation of its ordinances; and many arguments taking issue with the trial court's reasoning in its statement of decision.  We do not address any of those points.  Assertions that are not captioned under an appropriate legal argument heading are disregarded.  (See *Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 547–548; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 154, fn. 2.)  Further, the trial court's reasoning is irrelevant.  " ' "To justify a reversal, it is incumbent upon the appellant to show an erroneous ruling, and not merely bad reasoning or mistaken views of the law." ' " (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 654.)

For the reasons stated, Piazza has not shown that.

### III.

### *Sufficiency of the Evidence*

Finally, Piazza argues the City prejudicially abused its discretion in granting the conditional use permit for the pier.  He singles out one of the City Council's many findings in support of its determination to allow the pier: its finding that "to the extent the improvements would be visible from any one particular property, the impact is minimal."

Piazza challenges that finding on the ground there is "a plethora of evidence" demonstrating that the pier intrudes on the privacy of his home. He contends that people using the pier will be able to see directly into private

16

areas of his home, including the upstairs family room and dining area, a master bathroom, lower floor bedrooms and lower floor family room.

An abuse of discretion is established if, inter alia, an agency's findings are not support by the evidence. (Code Civ. Proc., § 1094.5.) On appeal from the denial of a petition for administrative mandamus "our role is identical to that of the trial court." (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 922 (*McAllister*).) " '[W]e review the factual basis behind the agency's order or decision for "substantial evidence in . . . light of the whole record." ' " (*Host Int'l, Inc. v. City of Oakland* (2021) 70 Cal.App.5th 695, 699 (*Host*); accord, *Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 284; Code. Civ. Proc., § 1094.5, subd. (c).) In doing so, we "resolv[e] all conflicts in the evidence and draw[] all inferences in support of the City's findings." (*Clary*, at pp. 284–285.) Like the trial court, we "presume[] that the agency's decision is supported by substantial evidence, and the petitioner bears the burden of demonstrating the contrary." (*McAllister*, at p. 921; accord, *Clary*, at p. 285.)

Piazza's argument is three pages, cites no legal authority and fails to heed our standard of review. The only evidence Piazza cites are several interior photographs that indicate the pier will be visible from those rooms of his house. Respondents agree that those photographs "do suggest that someone standing close to an uncovered window could likely be seen from McCloskey's pier." But, as respondents point out, city officials made site visits to the property and "could reasonably conclude that someone standing in that position, exposed to a public waterway allowing a variety of uses, would not likely have a privacy concern about being seen from there—and that someone standing away from the windows would be much less visible if at all." (See *Contra Costa County v. Pinole Point Properties, LLC* (2015)

17

235 Cal.App.4th 914, 937 [site visit by trier of fact constitutes substantial evidence in support of challenged factual findings].)  We also agree with respondents that the photographs "support a reasonable conclusion that, in most instances, someone lying down or even sitting in the rooms in question would not likely be visible from McCloskey's pier."

A different photograph, not cited by Piazza, depicts the exterior of Piazza's home and shows that it lies so close to the water compared to neighboring properties that its occupants inevitably would be impacted by all manner of maritime activity, not just a neighbor's pier.  We agree with respondents that in these circumstances the City could reasonably conclude that Piazza's privacy objections were exaggerated.

In his reply brief, Piazza does not respond to any of respondents' points on the privacy issue.

He has not met his burden of demonstrating the City's finding of "minimal" impact on his legitimate expectations of privacy are not supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs.


STEWART, J.

WE CONCUR:

RICHMAN, J.
MILLER, J.

18