[No. B003079. Second Dist., Div. Five. Feb. 4, 1985.]

MORRIS M. RIVARD, Plaintiff and Appellant, v.
BOARD OF PENSION COMMISSIONERS
OF THE CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Stillman, Green & Shinee and Ronald H. Stillman for Plaintiff and Appellant.

Ira Reiner, City Attorney, and Siegfried O. Hillmer, Assistant City Attorney, for Defendant and Respondent.

OPINION

**OSBORNE, J.**\*—Appellant, Morris Rivard, was employed as a police officer by the City of Los Angeles. Longstanding psychological problems developed to such a degree that he was treated in a psychiatric hospital for 10 months beginning in 1978. He returned to limited duty, but by mid-1980 was unable to perform his duties. He was granted a disability retirement pension, but contests a finding that his disability was not service connected. We discuss and apply the substantial evidence rule.

### PROCEDURAL AND FACTUAL SUMMARY

Rivard applied for workers' compensation which was granted in 1980 by a workers' compensation judge. That decision was annulled by this court in May 1981 in *City of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 119 Cal.App.3d 355 [174 Cal.Rptr. 25], herein *Rivard I.* (No res judicata issue has been raised as in *Kimbrough* v. *Police & Fire Retirement System* (1984) 161 Cal.App.3d 1143 [208 Cal.Rptr. 112].) Meanwhile, he had applied for a disability pension in 1979. After a hearing before the Board of Pension Commissioners (Board) of the City of Los Angeles on February 19, 1981, the Board determined that he was disabled, but not by reason of injuries received in the discharge of his duties. The Board granted him a nonservice-connected disability pension. Appellant contends he is entitled to a larger pension based on service-connected disability, because a police investigation aggravated or accelerated his preexisting illness. The only issue is whether the disability was service connected.

---

\*Assigned by the Chairperson of the Judicial Council.

On July 14, 1981, Rivard filed a petition for a writ of mandate, contending that the Board's decision was not supported by the evidence. After a hearing in 1983, the superior court ruled against him.

The factual history is set forth in the opinion in *Rivard I,* 119 Cal.App.3d at pages 357-361, and all the details need not be repeated here.

The reports of all the psychiatrists describe a traumatic history. Appellant spent his first nine years in an orphanage, marked by frequent spankings, and abuse by his older half-brother. Then he and his half-brother lived about two years with his alcoholic father who frequently physically abused them. His father died, and he and his half-brother went to live with their mother, also an alcoholic. He enlisted in the Marines, married a woman he had gotten pregnant, and served in combat in Vietnam. He returned to an unsatisfactory marriage and joined the Los Angeles Police Department. There were separations and reconciliations, and finally a divorce. He suffered several physical injuries on and off duty, including an off-duty life-threatening motorcycle accident in June 1977. In 1978, while visiting his estranged wife, they argued and he slapped or pushed her. She made a citizen's arrest and he was taken into custody by the Ventura County Sheriff. Shortly thereafter, he learned that the Los Angeles Police Department was investigating unrelated allegations that he was conspiring to murder his wife. The charges were not substantiated, but his always shaky mental condition deteriorated to the point that he was hospitalized, and he was ultimately found to be psychiatrically disabled.

Appellant was granted a non-service-connected disability retirement pension under paragraph (b) of section 190.12 of the Charter of the City of Los Angeles. He seeks a service-connected disability retirement pension under paragraph (a) of that section. Paragraph (a) provides in part that a police officer is entitled to a service-connected disability retirement pension if the Board determines that he is incapable of performing his duties as a result of becoming "physically or mentally incapacitated by reason of injuries received or sickness caused by the discharge of the duties of such person" as a police officer. The Board found that the disability was not service connected.

In reviewing the Board's determination, the trial court properly used its own independent judgment of the weight of the evidence in the administrative record. The court also found the disability was not service connected.

### THE SUBSTANTIAL EVIDENCE RULE

Appellant contends there was not substantial evidence to support the judgment of the trial court. ▮ To be "substantial," evidence must be rea-

sonable in nature, credible, and of solid value. (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].)

Respondent contends that the substantial evidence rule requires upholding the judgment of the trial court if there is *any* substantial evidence in support of the court's decision, *disregarding all contrary evidence.*

Appellant argues that to determine whether supporting evidence is reasonable, credible, and of solid value, an appellate court should consider the evidence in the light of the whole record. We agree.

After hundreds of cases regarding review for sufficiency of the evidence, further discussion would seem superfluous. However, the parties disagree on the scope of the review. The language in previous cases is inconsistent. Further, the Supreme Court has announced principles with important bearing on similar review in criminal cases. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 575-578, [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) We therefore address the principles for civil appeals, and apply them to this appeal in an administrative mandamus case.

1. *The review must be based on the whole record.*

 As noted, respondent contends that we must consider only supporting evidence, and disregard all contrary evidence. Indeed, the rule is sometimes stated that an ". . . appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*" (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 249; quoted in *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) Such statements, taken out of context, can be misleading, because they do not say how to determine whether the supporting evidence is substantial.

"Occasionally an appellate court affirms the trier of facts on isolated evidence torn from the context of the whole record. . . . Had the appellate court examined the whole record, it might have found that a reasonable trier of fact could not have made the finding in issue." (Traynor, The Riddle of Harmless Error (1969) p. 27.) "Not every surface conflict of evidence remains substantial in the light of other facts." (*People* v. *Holt* (1944) 25 Cal.2d 59, 70 [153 P.2d 21], and see example at p. 70.)

In practice, substantial evidence reviews have necessarily been based on the whole record. To base a determination solely on the supporting evidence in isolation would lead to a stultified review for substantial evidence, if not an actual "any evidence" rule. But notwithstanding divergent descriptions

of the process in appellate opinions, California has not used an "any evidence" standard for appellate review of sufficiency of the evidence.

This process was reviewed by the California Supreme Court in *People* v. *Johnson, supra,* 26 Cal.3d 557, 575-578. The court noted, at page 577, that there is "language in other cases which could be interpreted to suggest that an appellate court should sustain a conviction supported by any evidence which taken in isolation might appear substantial, even if on the whole record no reasonable trier of fact would place credit in that evidence." The court observed that such language may have been intended to refer to the rule that the court should review the evidence in the light most favorable to the judgment. "A formulation of the substantial evidence rule which stresses the importance of isolated evidence supporting the judgment, however, risks misleading the court into abdicating its duty to appraise the whole record." (*Johnson,* at p. 577.) The Supreme Court concluded, at page 578: "We think it sufficient to reaffirm the basic principles which govern judicial review of a criminal conviction challenged as lacking evidentiary support: the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."

The Supreme Court has recognized a requirement to review the whole record to determine the existence of substantial evidence in the following types of cases: termination of parental rights (*In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198]), workers' compensation (Lab. Code, § 5952; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 635-637 [83 Cal.Rptr. 208, 463 P.2d 432]), and administrative mandamus cases in which both the trial court and the appellate court use the substantial evidence test to review an administrative decision (Code Civ. Proc., § 1094.5, subd. (c); *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149, fn. 22 [93 Cal.Rptr. 234, 481 P.2d 242]; *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94-95 [84 Cal.Rptr. 113, 465 P.2d 1].)

The Supreme Court has discussed substantial evidence review in civil cases without citing *Johnson.* (See for example, *Leff* v. *Gunter* (1983) 33 Cal.3d 508, 518 [189 Cal.Rptr. 377, 658 P.2d 740]; *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253].) However, those cases did not reject whole record review because it was not being considered. *Johnson* has been cited over 150 times, but in only a few civil cases. (See *Teamsters Agricultural Workers Union* v. *International Brotherhood of Teamsters* (1983) 140 Cal.App.3d 547 [189

Cal.Rptr. 627]; and *Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870 [197 Cal.Rptr. 925].)

■ In administrative mandamus cases involving vested fundamental rights, such as this case, the trial court is required to exercise its "independent judgment" of all the evidence, instead of using the "substantial evidence" test. (*Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793, 797 [195 Cal.Rptr. 681, 670 P.2d 335]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45-46 [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 143.) Thereafter, an appellate court need only review the record to determine whether the trial court's findings are supported by substantial evidence. (*Bixby* v. *Pierno, supra,* at p. 143, fn. 10; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 309 [196 P.2d 20].) Must that determination be based on a review of the whole record?

■ Review of evidence in isolation can be misleading. In practice, substantial evidence reviews have necessarily been based on the whole record. Whole record review has been clearly mandated in appeals of criminal cases and several other types of cases. We conclude that in all cases, the determination whether there was substantial evidence to support a finding or judgment must be based on the whole record. The reviewing court may not consider only supporting evidence in isolation, disregarding all contradictory evidence.

We turn to other aspects of sufficiency review to discuss the application and effect, if any, of whole record review.

2. *View evidence in the light most favorable to the judgment.*

■ Where there is conflicting evidence, or evidence susceptible of conflicting inferences, the general rule is not to disturb the judgment. All presumptions are in favor of the judgment. Trial judges and juries are the exclusive judges of credibility and may disbelieve any witness. Trial courts are designed and responsible for determining facts. Appellate courts are designed to review errors of law. Economy, efficiency, and practicality require recognition of those specialized roles. Appellate courts can't retry all cases and shouldn't try. There is reason to question whether the results would be better if reviewing courts redecided all cases. (Wright, *The Doubtful Omniscience of Appellate Courts* (1957) 41 Minn.L.Rev. 751.)

To preserve the fact-finder's role as weigher of the evidence, reviewing courts give great deference to trial courts. On appeal, the evidence is considered in the light most favorable to respondent, giving the benefit of every

reasonable inference, and resolving all conflicts in support of the judgment. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 245-247.) Whole record review does not change this rule. (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781]; *People* v. *Johnson, supra,* 26 Cal.3d 557, 576-578.)

### 3. *Determine whether the supporting evidence is substantial.*

■ Dozens, if not hundreds, of cases recite that an appellate court does not weigh the evidence. For example, the Supreme Court, in *Estate of Teel* (1944) 25 Cal.2d 520, at page 527 [154 P.2d 384] stated: "Of course, all of the evidence must be examined, but it is not weighed." This can only be true in a limited sense. A reviewing court does not weigh the evidence again like a trier of fact to determine whether the *reviewing court* believes a witness or considers an inference to be reasonable. Likewise, the reviewing court does not weigh supporting evidence against contrary evidence to determine which is stronger, more likely, more reasonable, etc. Those comparisons and determinations are reserved to the trier of fact.

■ A judgment will not be reversed based on an evaluation of the *strength* of the opposing evidence or the relative weakness of supporting evidence when compared to opposing evidence. It can be reversed based only on the *absence or insubstantiality* of supporting evidence, as determined from a review of all related evidence in the record.[1] (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 252.)

■ However, notwithstanding the statements in cases such as *Teel, supra,* a reviewing court must weigh the supporting evidence in another sense to determine whether it is substantial, that is, whether *any* reasonable trier of fact *could* have considered the evidence to be reasonable, credible, and of solid value. (*Jackson* v. *Virginia, supra,* 443 U.S. 307, 318-319 [61 L.Ed.2d 560, 573-574]; *People* v. *Johnson, supra,* 26 Cal.3d 557, 576-577; *People* v. *Alcala* (1984) 36 Cal.3d 604, 623 [205 Cal.Rptr. 775, 685 P.2d 1126].)

---

[1] It is sometimes stated that an appellate court will not uphold a judgment based upon evidence which is inherently improbable. (See *People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267].) However, improbability alone will not justify appellate rejection of testimony. (*People* v. *Huston* (1943) 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Thornton, supra.*) "Our responsibility to see justice done does not allow us to reweigh the evidence and to decide contrary to a [trier of fact] because of the statistical improbability of these specific events having occurred. There are times when truth is indeed stranger than fiction." (*People* v. *Turner* (1983) 145 Cal.App.3d 658, 671-672 [193 Cal.Rptr. 614].) The exact sequence of results from four actual rolls of a die is obvious, despite its a priori probability of less than one in one thousand. Improbability is not necessarily insubstantiality.

### 4. *Determine whether the substantial evidence is sufficient.*

■ Evidence may be substantial without being sufficient to sustain a judgment. The evidence may be reasonable, credible, and of solid value in light of the whole record, and may clearly establish facts A, B, and C. The judgment must still be reversed if fact D, which is essential, is not established by facts A, B, and C or by other substantial evidence. That is unchanged by whole record review. A reviewing court must merely determine whether any reasonable trier of fact could have inferred fact D from facts A, B and C, or from other substantial evidence.[2]

Whole record review is not an invitation for wholesale reversals or retrying of cases on appeal. A trier of fact will rarely infer an essential fact from isolated supporting evidence, where that inference is not reasonable if viewed with all the other evidence. Where that occurs, the judgment must be reversed.

### 5. *Restatement of the rule.*

■ When a judgment is attacked for insufficiency of the evidence, the appellate court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that some reasonable trier of fact could find that the judgment and each essential element thereof was established by the appropriate burden of proof.

### APPLICATION

■ Reports were rendered by several psychiatrists.[3]

Though they expressed themselves in different ways, the psychiatrists agreed that appellant had serious longstanding psychological problems

---

[2]We do not address the problem of how to determine when the inferences to be drawn are questions of law which can be resolved by an appellate court, rather than questions of fact regarding which the reasonable inferences drawn by the trier of fact are controlling. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 254; *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr. 566]; compare *Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 894 [122 Cal.Rptr. 249] and *McKinney* v. *Kull* (1981) 118 Cal.App.3d 951, 955-956 [173 Cal.Rptr. 696].)

[3]Dr. Bajor stated: "In summary, therefore, a number of factors contributed to the development of Mr. Rivard's illness including the predisposition to depression caused by early childhood deprivation; the low self-esteem, the stormy marriage, the arrest for assaulting his wife, and being questioned and ostracized by his employer, the police department, for the alleged conspiracy to commit murder." Appellant suffered a life-threatening motorcycle accident in June 1977; Dr. Bajor believed he then reassessed his life and recognized how

which intensified after his life-threatening off-duty motorcycle accident and the breakup of his marriage. However, he was not disabled until after he learned he was being investigated by the Los Angeles Police Department for allegations which were not substantiated, regarding matters outside of his functioning as a police officer. There is not only substantial evidence to establish those facts, but general agreement.

The question in this case is not substantiality but sufficiency, that is, whether the facts established by the evidence support the conclusions drawn by the Board and the trial court. The real issue then is what consequences flow from those facts. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 74, fn. 7 [64 Cal.Rptr. 785, 435 P.2d 553].)

■ The California Supreme Court recently held that, as a general rule, any "psychiatric injury resulting from an employer's investigation of ultimately unproved charges against an employee arises out of and in the course of the employment whether or not the alleged misconduct was within the scope of employment." (*Traub* v. *Board of Retirement, supra,* 34 Cal.3d 793, 796, 799-801.) However, the Supreme Court, discussing appellant's workers' compensation case, *Rivard I, supra,* recognized an exception for law enforcement. "It is the duty of a police department to investigate crime wherever it occurs, and a police officer under investigation for alleged criminal activity unrelated to his duties may stand, as the Court of Appeal concluded in the case before it, 'in no different a position from any private citizen accused of criminal activity.' " (*Traub,* at p. 801.) Thus, the fact that the person being investigated is also employed by the investigating law enforcement agency does not make the disability service connected.

---

badly he treated his family and related to others, which was a factor in the development of his depression. Although events between appellant and the Los Angeles Police Department had an influence on the development of Rivard's illness, Dr. Bajor questioned if these would be considered "job related" since, "strictly speaking, they did not arise out of Mr. Rivard's duties as a policeman. Actually, if anything, it was the threat of loosing [*sic*] his job rather than the performance of his duties which contributed to the disability."

Dr. Gillick stated: "It was not his police work itself that pushed Mr. Rivard over the edge into the current chronic impaired state. It was the shattering [*sic*] of the image of his LAPD family that disintegrated his borderline personality integration."

Dr. Gary Davis, in evaluating for workers' compensation, stated that appellant's disability was predominantly work related. There were a series of events and stresses that accumulated and culminated in the disability. Rivard's marital disharmony and accident history contributed to his current disorder. "However he was, despite his mental psychic discomfort, functioning satisfactorily up until the time of his investigations by the LAPD."

Dr. Robert Hoffman stated that, after his hospitalization and return to limited duty, appellant "felt trapped in his current position in which he must report for work at a job he does not particularly enjoy and which has no real future for him but which he must keep in order to earn a living." Dr. Hoffman said: "I believe Mr. Rivard's current deterioration can be ascribed virtually entirely to his current work predicament, in which he does not appear to have any viable, or at least acceptable, alternatives available to him, and to his protracted Worker's Compensation case."

As appellant urges, and as we conclude we must, we have reviewed all the evidence in the record. It consists of psychiatric reports based on interviews of appellant and on his medical and psychiatric history. That evidence is substantial (reasonable, credible, and of solid value) and appellant does not contend otherwise. The underlying facts of the case are not really in dispute.

Based upon the facts established by that evidence, the Board and the superior court both concluded that appellant's disability was not service connected. Whether viewed as a question of law or a question of fact, we draw the same conclusion. That conclusion is at least consistent with, if not compelled by, *Traub*. We certainly cannot hold that no reasonable trier of fact could have drawn that conclusion from the facts supported by the evidence.

Based on the whole record, the evidence was substantial, and sufficient to support the actions of the Board and the judgment of the trial court. The judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.