[No. A051098. First Dist., Div. Five. May 28, 1991.]

JAMES GLOVER, Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE, Defendant and
Respondent.

204

COUNSEL

Chris P. Andrian for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Vivien Hara Hersh, Deputy Attorney General, for Defendant and Respondent.

### OPINION

**LOW, P. J.**—Appellant James Glover appeals from a judgment denying mandamus relief in his challenge to the revocation of his license to practice medicine by respondent Board of Medical Quality Assurance. We affirm the judgment.

On February 9, 1990, respondent issued a decision and order revoking appellant's physician and surgeon's license effective March 11, 1990. Appellant's license was revoked for violations of Business and Professions Code sections 2234, subdivision (b) (gross negligence) and 725 (excessive prescribing) in appellant's treatment of Larry Wood, a patient with a history of alcohol addiction, hallucinations, violence, depression and numerous suicide attempts. Wood was first seen by appellant in 1980 and treated with various prescribed medications until June 1981. Wood returned to appellant's care on June 10, 1985, when he was living at an alcohol-treatment facility. Appellant took no history of Wood for the period between June 1981 and June 1985 and did not have Wood sign releases for medical records for that period. Had appellant obtained a recent medical history on Wood, he would have discovered that Wood had attempted suicide on antipsychotic medication in 1984; that Wood was self-admitted to a hospital in June 1985 for suicidal ideation; and that Wood had obtained a prescription from another physician for Mellaril and Xanax.

Appellant began treating Wood by prescribing large doses of Mellaril, a tranquilizer, and Elavil, a tricyclic antidepressant, sometimes a month's supply or more. On May 14, 1986, Wood attempted suicide with an overdose of Mellaril and Elavil taken from appellant's May 1, 1986, prescription. After reducing the dosage level for a short time, appellant went back to prescribing a month's supply of Mellaril and Elavil in July 1986.

On August 15, 1986, three days after appellant prescribed the increased dosage of Mellaril and Elavil, Wood once again attempted suicide on the drugs. Although appellant received the hospital discharge summary which noted toxic levels of Elavil and Mellaril in Wood's system at the time of admission, there was no change in the type or amount of medication prescribed, except that on September 9, 1986, appellant added Valium to Wood's usual medications.

On January 2, 1987, Wood again attempted suicide on Elavil, Mellaril and now also Valium. On January 29, 1987, Wood saw appellant. By this time, appellant had received the discharge summary of Wood's January 2, 1987, suicide attempt. Nevertheless, appellant prescribed the usual dosage of Elavil, Mellaril, and Valium. After appellant once again prescribed these drugs on February 25, 1987, Wood succeeded in committing suicide by overdosing on the prescribed medication the next day.

Appellant had twice been the subject of disciplinary proceedings and was on probationary status at the time of Wood's suicide. The first disciplinary action involved excessive and negligent prescribing of controlled substances for 14 patients, prescribing controlled substances to an addict, and violating the state drug laws. On August 21, 1985, appellant was placed on five years' probation.

The second disciplinary action against appellant concerned findings that he had several thousand dosage units of controlled substances in his possession in violation of the terms of his probation and that he had self-administered several controlled substances in 1985. On October 24, 1986, appellant admitted the violations in the second action. His probation was extended two years to 1992 and additional terms and conditions were imposed.

The third disciplinary proceeding, which is the subject of this appeal, took place over five days before a hearing panel of the Third District Medical Quality Review Committee. At the hearing, several experts testified that appellant's conduct in repeatedly dispensing potentially lethal doses of prescribed medications for a patient who had made several suicide attempts using these medications constituted gross negligence and excessive prescribing. Appellant did not present any expert testimony, but argued that he practiced well within the standard of practice of psychiatrists in the community and that the tragic outcome of this case stemmed from the difficulty of treating a high-risk, suicidal patient.

The hearing panel found appellant to be grossly negligent and to have been guilty of excessive prescribing. The panel placed appellant on further probation. Respondent adopted the panel's findings of fact and determination of issues, but increased the penalty to revocation of appellant's license to practice medicine.

Appellant unsuccessfully sought a writ of review in superior court, pursuant to Code of Civil Procedure section 1094.5, challenging respondent's decision.

■ In administrative mandamus proceedings, the trial court exercises its independent judgment on the evidence before it, while the appellate court

reviews the record as a whole to determine whether the trial court's findings are supported by substantial evidence. (*Franz* v. *Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 135 [181 Cal.Rptr. 732, 642 P.2d 792].) On appeal, the record is viewed in the light most favorable to respondent, indulging all reasonable inferences and resolving all conflicts in support of the judgment. (*Rivard* v. *Board of Pension Commissioners* (1985) 164 Cal.App.3d 405, 412-413 [210 Cal.Rptr. 509].)

■ Appellant contends the evidence is insufficient to support respondent's finding that appellant's conduct constituted an "extreme departure from the community standard of practice." James Stubblebine, M.D., a qualified expert in psychiatry, testified that a psychiatrist dealing with a difficult, unreliable patient such as Wood should have gathered an extensive medical history on the patient from numerous outside sources, such as hospital records, other treating physicians, family members, and close friends, before a treatment program was instituted. Furthermore, Dr. Stubblebine believed appellant should have been willing to try a new and different treatment approach with Wood after Wood's repeated suicide attempts made it abundantly clear that simply prescribing medication was not an effective treatment. Dr. Stubblebine concluded appellant's treatment was an extreme departure from the standard practice of medicine in that, known to appellant, Wood had tried to commit suicide on the medications several times and "to continue to prescribe large amounts in the face of this pattern, which is firmly established, I think is endangering the patient, frankly."

Dr. Frederick Meyers, a professor of pharmacology and a practicing physician, was qualified as an expert witness and described the drugs in question and their effects. It was Dr. Meyers's opinion that appellant's practice of repeatedly prescribing psychotropic medications in large doses to a patient, who, known to appellant, repeatedly attempted suicide using these medications was an extreme deviation from acceptable standards of practice. Dr. Meyers explained that in the face of Wood's repeated suicide attempts "there should be some modification of the treatment. There should be some recognition of the subjectively unpleasant effects of these drugs. There should be some effort at greater surveillance, and there should be an effort to put less medication in the hands of the patient at any one time."

Appellant argues that this case is analogous to *Wheeler* v. *State Bd. of Forestry* (1983) 144 Cal.App.3d 522 [192 Cal.Rptr. 693]. There a registered professional forester was disciplined for "gross incompetence." The court noted that competence has to do with ability, qualifications, or fitness to perform a prescribed duty. The record, however, contained no evidence, statute, rule, regulation, or implied standard by which to measure Wheeler's

competence and thus failed to provide what conduct was prescribed. Under such circumstances, the court found the record contained no ascertainable standard of conduct and held that the board could not rely upon "gross incompetence" as a basis for discipline. (*Id.*, at pp. 527-528.)

Unlike *Wheeler*, the record contains expert testimony unequivocally indicating that appellant's treatment of Wood constituted an extreme departure from the acceptable standard of medical care in the community and that a minimally competent physician would have chosen a different course of treatment which would have avoided or minimized the unacceptable risk associated with continuing to prescribe lethal doses of medication to a suicidal patient with a history of overdosing on these medications.

Appellant argues that the treatment of mental illness is, at most, an inexact science and legitimate differences of opinion as to the proper course of treatment are commonplace. As long as the differences of opinion are legitimate, we have no dispute with the notion that different methods of treatment can all be considered acceptable medical practice. However, the uncontradicted expert testimony in this case indicated that appellant's practice of repeatedly prescribing lethal dosages of drugs to Wood in light of his numerous suicide attempts constituted a breach of a recognized medical standard of care. This was not of an isolated nature, but provided the basis for appellant's third disciplinary action for prescribing drugs in a nontherapeutic manner in four and one-half years. There is substantial evidentiary support for respondent's finding that appellant's treatment of Wood constituted a substantial deviation from accepted medical standards.

■ Appellant next complains that he was denied his fundamental right to cross-examine Dr. Stubblebine, an expert witness. Appellant attempted to cross-examine this witness on the propriety of another physician's treatment of Wood approximately two months prior to Wood's suicide. After an unsuccessful suicide attempt, Wood went to a community outreach center and was seen by Dr. Worthington, who prescribed a month's supply of Elavil. Dr. Worthington testified at the hearing that he had prescribed this medication based on an intake examination with Wood with no records available. Once Wood executed the proper medical releases and Dr. Worthington received Wood's complete medical history, Dr. Worthington realized he had "misjudged the situation" and he immediately reduced Wood's level of medication.

During cross-examination, Dr. Stubblebine was asked if, in his expert opinion, he could "subscribe [Wood's] death to the conduct of Dr. Worthington as much as to the conduct of [appellant]?" The deputy attorney general's objection was sustained and the hearing officer instructed the expert not to

answer. Appellant now claims he was denied the right to determine "what was or was not the standard of practice for the treatment of suicide patients in this particular circumstance."

Expert opinion testimony evaluating the conduct of another physician who is not the subject of the hearing is irrelevant and the objection was rightly sustained. The parties cannot prove or disprove negligence by scrutinizing the care another physician utilized in treating the patient in question. Even if appellant was successful in eliciting the fact that another physician engaged in identical treatment practices, this would not indicate appellant's treatment was competent. The subject of inquiry is whether *appellant's* conduct was a departure from the acceptable standard of medical care in the community—not whether another physician's treatment constituted unprofessional conduct.

The judgment is affirmed.

King, J., and Haning, J., concurred.